# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 15-CV-02680-LTB-CBS

KRISTEN MICHAUD,

Plaintiff,

v.

LAKESIDE SPIRITS d/b/a MOLLY'S LIQUORS

Defendant.

## SCHEDULING ORDER

### 1. DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

This conference was held on May 27, 2016 at 8:30 a.m.

| Attorneys for the Plaintiff: | Attorneys for Defendant: |
|---|---|
| Bachus & Schanker, LLC | JACKSON LEWIS |
| Sara A. Green | Peter F. Munger |
| 1899 Wynkoop, Suite 700 | 650 17th Street, Suite 2600 |
| Denver, Colorado 80202 | Denver, CO 80202 |
| 303-893-9800 | 303-876-2217 |

### 2. STATEMENT OF JURISDICTION

Jurisdiction is invoked pursuant to 28 U.S.C §§451, 1331, 1337 and 1343. This action is authorized and instituted by §§703, 704 and 706(f)(3) of Title VII, 42 U.S.C. §§2000e-2, 2000e-3 and 2000e-5(f)(3). The Court has supplemental jurisdiction to hear Plaintiff's state law claims in accordance with 28 U.S.C. § 1367.

1

### 3. STATEMENT OF CLAIMS AND DEFENSES

1. a.   *Plaintiff:*

Plaintiff Kristen Michaud was employed by Molly's owner, Rufus Nagel, to be the General Manager of Molly's liquor store. Michaud was persuaded to leave a twenty-year career at Safeway to pursue this endeavor. Nagel knew that Michaud had no prior experience in the liquor business. During her employment Michaud was tasked with various responsibilities that exceeded her general manager position. She was responsible for securing the liquor license, dealing with vendors about phone lines and other business items, and had responsibility over the financials for Molly's, among many other tasks. Michaud also had access to the financial accounts and was instructed to sign checks in emergency situations-which she did once when payroll was going to bounce.

Upon her hire Michaud, and the only other female employee at the time, were placed in an office with no heat. Michaud often had to go to Starbucks to work because it was too cold in her office. In contrast, the male employees were housed a few doors down at a converted T-Mobile store that had heat. When Michaud complained about this she was told by Nagel to "leave the boys alone." The male employees were also given bonuses and taken to lunch. Michaud complained about the disparate treatment, especially the fact that she and the other female did not receive bonuses until after Michaud made several complaints, while the male employees were given them without hesitation.

On Jan. 2, 2015, Michaud complained in good faith that some of the male employees including, Justin Savage, were drinking on the job. One of the employees also requested that Michaud store beer in for him in her refrigerator. This type of drinking is

believed to be against the against the liquor laws and Michaud felt that it could have seriously impacted Molly's future. Four days after making her good faith complaint, on January 6, 2015, Michaud was terminated for allegedly not being a "good fit." Nagel specifically told Michaud it was not due to her performance.

In addition to the claims set forth in her Complaint, Michaud will seek to amend her complaint to add a breach of contract claim. The contract Michaud received upon her hire granted Michaud 2 shares of Molly's equal to $50,000.00 each upon her hire as well as a bonus for fully opening the store. Michaud was not given the shares or bonus per the contract. Upon information and belief Justin Savage was also granted ownership shares and was fully paid out upon his leave from employment.

### b.   *Defendant:*

Lakeside Spirits was founded in March 2013, and began doing business as Molly's—a full service liquor store—in December 2014.  Lakeside was founded by Rufus Nagel, managing member, and Annie Campbell, co-founder.  In order to facilitate the opening of Molly's, and to hire employees to staff it, Molly's initiated a search for a general manager using an executive search firm.  Despite Michaud's lack of experience in the liquor business, but due to her experience as a manager in the grocery business, in July 2014, Molly's extended Michaud an offer for full-time employment in the position of general manager.  Michaud accepted Molly's offer of employment, and began working as the general manager on or about August 15, 2014.  Nagel was Michaud's direct supervisor for the duration of her employment.

At the start of Michaud's employment, Molly's had not yet secured permanent office space and was working out of a temporary space near the location of the store.  All employees worked out of this space, which was equipped with space heaters and electricity.  Eventually, in or about September 2014, Molly's

acquired additional temporary space in which to conduct business meetings with potential and existing vendors and investors. As a result, those employees responsible for such meetings began working out of the additional space.

On December 8, 2014, Nagel emailed Michaud and administrative assistant and payroll coordinator Claudia Sandoval regarding accounting for the end of the year. In this email, Nagel stated, "For the time being, unless there is an emergency, I will sign all checks." However, despite this instruction, Michaud signed a check for $37,101.69 on December 31, 2014. As a result of poor performance, including this misconduct (which was in direct contravention to Nagel's instruction), Molly's decided to discharge Michaud. On January 5, 2015, Molly's notified Michaud by telephone of her discharge.

Defendant denies it discriminated against Plaintiff because of her gender and denies it retaliated against Plaintiff for engaging in protected activity. Defendant denies its termination of Plaintiff's employment was wrongful in any way and denies that Plaintiff is entitled to any damages whatsoever. Additionally, should Plaintiff amend her complaint to include a breach of contract claim, Defendant denies the existence of and breach of any contract between Defendant and Plaintiff relating to Plaintiff's employment and/or compensation.

## 4. UNDISPUTED FACTS

The following facts are undisputed:

1. Michaud began employment with Defendant on August 15, 2014.
2. Michaud's employment at Molly's was terminated on January 5, 2015.

## 3. COMPUTATION OF DAMAGES

*Plaintiff:*

Plaintiff seeks to recover damages as follows:

4

Ms. Michaud was making $100,000 per year while employed at Molly's. Ms. Michaud was out of work from January 6, 2015 to May 2015 for a loss of $38,461.40. She became employed in May 2015 making $65,000/per year (a loss of $35,000/year from her $100,000 job at Molly's and a difference of $773.07 a week). That job ended in February 2016 and she went on unemployment. Ms. Michaud has been diligently looking for suitable employment and may be receiving an offer soon. Regardless, Ms. Michaud has made a total of $39,354.00 since being wrongfully terminated by Molly's. From May until February 2016 she lost approximately $26,284.38) (1923.07/wk – 1250.00/wk = 773.07/wk * 34 weeks = 26,284.38).

In addition to her wage loss, Ms. Michaud was promised benefits, in the form of health care, among others, that she never received. Ms. Michaud was required to stay on Cobra during her employment. Molly's did reimburse her Cobra from August through November 2014. Ms. Michaud paid out of pocket for December and January of approximately $2,922.00. We estimate that the cost of her health insurance should have been about 20% of her income and therefore she lost approximately $16,922.00 in benefits ($20,000-$6,000 in Molly's paid cobra payments + 2,922 in out of pocket cobra) in one year.

According to her contract dated July 24, 2014, Ms. Michaud was to receive 2% ownership upon hiring. Molly's stated that the "strike price for these shares will be $50,000 per unit for a total strike price of $100,000 which is the price paid by our outside investors for this ownership." Ms. Michaud has not received these ownership shares.

Also outlined in the contract is the bonus Ms. Michaud was to receive quarterly. It states, "[f]or the initial start-up phase of the business through the end of 2015, you will be eligible for up to $30,000 and payable on a quarterly basis…As an example, successfully opening the store fully

staffed and ready to work on 10/31/14 will be 50% ($15,000) of the available bonus." Ms. Michaud received only $3,000.00 of the $15,000.00. She is currently owed $12,000.00.

$38,461.40 (lost wages from Jan.-May 2015)

$26,284.38 (difference b/w wages May to February 2016)

$30,922.80 (future lost wages Feb. 2016 to December 2016)

$16,922.00 (lost benefits)

$100,000.00 (ownership shares)

$12,000.00 (guaranteed bonus)

Total = $224,590.58.

Plaintiff will seek noneconomic damages in the same amount for humiliation, severe emotional pain, inconvenience, and mental anguish.

Plaintiff will seek punitive damages in accordance with the statutory caps.

Plaintiff will also seek to recover attorney fees, costs, interest and expert fees. These amounts are unknown at the present time.

This method for calculating damages has been provided by Plaintiff's counsel in order to comply in good faith with the Court's instructions and Fed.R.Civ.P. 26(a)(l). Plaintiff anticipates that discovery, and documents from the Defendant, will provide a more precise measure of all damages.

*Defendant:*

Defendant denies Plaintiff is entitled to damages. Defendant will seek to recover its attorneys' fees, costs, and any other relief to which it may be entitled.

## 4. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED.R.CIV.P. 26(f)

a. Date of Rule 26(f) Meeting:

**May 6, 2016**

b. Names of each participant and party he/she represented.

Sara A. Green for Plaintiff

Kristen M. Baylis for Defendant

c. Statement as to when Rule26(a)(1) disclosures were made or will be made.

**On or before May 20, 2016**

d. Proposed changes if any, in timing or requirement of disclosures under Fed.R. Civ.P.26(a)(1).

None.

e. Statement concerning any agreements to conduct informal discovery, including joint interviews with potential witnesses, exchanges of documents, and joint meetings with clients to discuss settlement. If there is agreement to conduct joint interviews with potential witnesses, list the names of such witnesses and a date and time for the interview which have been agreed to by the witness, all counsel, and all pro se parties.

None.

f. Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of unified exhibit numbering system.

The parties agree to a unified exhibit numbering system for depositions. The parties agree to meet and confer regarding any discovery disputes. The parties will continue to explore the possibility of other such agreements or procedures as the case progresses.

g.      Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form. In those cases, the parties must indicate what steps they have taken or will take to (i) preserve electronically stored information; (ii) facilitate discovery or electronically stored information; (iii) limit associated discovery costs and delay; and (iv) avoid discovery disputes relating to electronic discovery.

The parties do not anticipate that their claims or defenses will involve extensive electronically stored information.  The parties have agreed to work cooperatively towards producing any such relevant, non-privileged data in paper format and have agreed to work cooperatively to produce ESI that is proportional to the needs of the case considering the factors set forth in Rule 26(b)(1).  Plaintiff anticipates seeking electronic discovery limited to e-mails. Defendant anticipates seeking electronic discovery related to Plaintiff's damages claims and to Plaintiff's communication about her employment with Defendant and the termination of that employment, including email communication (including that from Plaintiff's personal email accounts) and social media information.

h.      Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

The parties certify that, as required by Fed. R. Civ. P. 26(f), they have discussed the possibilities for a prompt settlement or resolution of the case by alternate dispute resolution.

### 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

a. Modifications which any party proposes on the presumptive numbers of depositions or interrogatories contained in the federal rules.

   Six depositions per side including experts.

   25 interrogatories.

b. Limitations which any party wishes to propose on the length of depositions.

   Each deposition shall be limited to one day of seven hours as set forth by Rule 30(d)(1).

c. Limitations which any party wishes to propose on the number of depositions.

   Six depositions per side including experts.

d. Limitations which any party proposes-on number of interrogatories, requests for production of documents and/or requests for admissions.

   Each party shall be limited to 25 interrogatories, 25 requests for production, and 25 requests for admission.

e. Other Planning or Discovery Orders

   The parties anticipate entering into a stipulated protective order regarding information related to non-party employees, private health information, and other proprietary or private information.

## 9. CASE PLAN AND SCHEDULE

**a.**  Deadline for Joinder of Parties and Amendment of Pleadings: ~~September 15, 2016~~ **June 30, 2016**

b.  Discovery Cut-off: November 30, 2016.

c.  Dispositive Motion Filing Deadline: January 5, 2017.

d.  Expert Witness Disclosure:

(1) State anticipated fields of expert testimony, if any.

Experts may be needed in the area of economic losses.

(2) State any limitations proposed on the use or number of expert witnesses.

Two (2) per side.

(3) The parties shall designate all experts, and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(2) on or before September 23, 2016**.**

(4) The parties shall designate all rebuttal experts and provide opposing counsel with all information specified in Fed. R. Civ. P 26 (a)(2) on or before October 28, 2016.

Notwithstanding the provisions of Fed. R. Civ. P. 26(a)(2)(B), no exception to the requirements of the rule will be allowed by stipulation of the parties unless the stipulation is approved by the court. In addition to the requirements set forth in Rule 26(a)(2)(B)(I)-(vi); the expert's written report also must identify the principles and methods on which the expert relied in support of his/her opinions and describe how the expert applied those principles and methods reliably to the facts of the case relevant to the opinions set forth in the written report.

**e.     Deposition Schedule:**

| Name of Deponent | Date of Deposition | Time of Deposition | Expected length of Deposition |
|---|---|---|---|
| Plaintiff | TBD | TBD | Seven (7) hours |
| 30(b)(6) Designee | TBD | TBD | Seven (7) hours |
| Rufus Nagel | TBD | TBD | Seven (7) hours |
| Employees of Defendant (TBD) | TBD | TBD | Four (4) hours each |
| TBD | | | |

f.  Deadline for Interrogatories

    45 days before the discovery cut-off.

g.  Deadline for Production of Documents and/or Admissions

    45 days before the discovery cut-off.

## 10. DATES FOR FURTHER CONFERENCES

a.  Status conferences will be held in this case at the following dates and times:

b.  A final pretrial conference will be held in this case on **July 21, 2017 at 8:30 a.m.** before Magistrate Judge Shaffer.  A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than **seven** (**7**) days before the final pretrial conference.

## 10. OTHER SCHEDULING MATTERS

a.  Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.

    None.

b.  Anticipated length of trial and whether trial is to the court or jury.

    The parties anticipate a three (3) day jury trial.  **A three day jury trial is set to commence on September 11, 2017 at 9:00 a.m. before District Judge Babcock.**

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1D. by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all pro se parties.

Counsel will be expected to be familiar with and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1A. In addition to filing an appropriate notice with the clerk's office, a pro se party must file a copy of a notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to this case.

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any motion for withdrawal, motion for substitution of counsel, or notice of change of counsel's address or telephone number with the clerk of the magistrate judge assigned to this case.

### 13. AMENDMENTS TO SCHEDULING ORDER

This Scheduling Order may be altered or amended only upon a showing of *good cause*.

DATED this 27th day of May, 2016.

BY THE COURT:

s/ Craig B. Shaffer
Judge Craig B. Shaffer
United States District Judge

APPROVED:

*s/ Sara A. Green*                               *s/ Kristen M. Baylis*

Sara A. Green                                    Kristen M. Baylis
Bachus & Schanker, LLC                           Peter F. Munger
1899 Wynkoop, Suite 700                          JACKSON LWEIS, LLC
Denver, Colorado 80202                           950 17th Street, Suite 2600
303-893-9800                                     Denver, CO 80202

Attorneys for the Plaintiff             (303) 892-0404
                                        Attorneys for the Defendant